## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| RICHARD SOLAND | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE GEORGE WASHINGTON | ) |
| UNIVERSITY | ) |
| | ) |
| and | ) |
| | ) |
| THE GEORGE WASHINGTON | )   Case No. _____ |
| UNIVERSITY SCHOOL OF | ) |
| ENGINEERING AND APPLIED | ) |
| SCIENCE VOLUNTARY | ) |
| SEPARATION PLAN | ) |
| | ) |
| and | ) |
| | ) |
| THE GEORGE WASHINGTON | ) |
| UNIVERSITY OFFICE OF THE | ) |
| EXECUTIVE VICE PRESIDENT FOR | ) |
| ACADEMIC AFFAIRS | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## **COMPLAINT**

Plaintiff Richard Soland ("Professor Soland" or "Plaintiff"), by his counsel, Bailey &

Ehrenberg PLLC, hereby submits this Complaint against Defendants The George Washington

University ("GW"), The George Washington University School of Engineering and Applied

Science Voluntary Separation Plan (the "Plan") and The George Washington University Office

of the Executive Vice President for Academic Affairs (the "EVPAA"), and avers as follows:

**THE PARTIES**

1.      Plaintiff is an individual residing at 3426 Mansfield Road, Falls Church, Virginia 22041.

2.      Defendant GW is an educational institution with a principal place of business at 2121 I Street, N.W., Washington, D.C. 20052.  Defendant GW is the "Plan Sponsor" of the Defendant Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

3.      Defendant Plan is a "severance plan" and constitutes an "employee welfare benefit plan" within the meaning of § 3(2)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(2)(A).

4.      Defendant EVPAA is the designated "Plan Administrator" of the Plan responsible for the day-to-day administration of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity, with the amount in controversy being over $75,000).

6.      Venue is appropriate in the District of Columbia pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because at all relevant times:  (a) GW maintained offices in this judicial district; (b) the subject employee benefit plan was administered in this judicial district; and (c) the below-described violations of ERISA took place in this judicial district.

**FACTS**

7.      Plaintiff was a Professor of Operations Research in GW's School of Engineering and Applied Science ("SEAS") for over thirty (30) years, ending with his departure from GW on December 31, 2009.

8.      In August 1994, GW implemented a Voluntary Separation Program (the "1994 Separation Program") open to tenured members of the SEAS with a specified period of time for election.  Under the terms of the 1994 Separation Program, GW offered tenured SEAS faculty three weeks of salary for each year of full-time service to GW.  The 1994 Separation Program was offered to tenured faculty as part of the "recovery plan" for SEAS.  As a tenured faculty member of SEAS at the time, Plaintiff was eligible to participate in the 1994 Separation Program.  Plaintiff chose not to participate in the program.

9.      On November 2, 2007, SEAS Dean Timothy Tong announced to the SEAS Advisory Council that he would be stepping down as Dean of SEAS effective June 30, 2008.

10.      On November 6, 2007, Donald Lehman, GW's Executive Vice President for Academic Affairs, announced to all full-time faculty members of SEAS that Dean Tong would be stepping down.  Mr. Lehman also announced at this time that a search committee was being formed to look for a successor.

11.      On January 28, 2008, GW placed an advertisement for the SEAS Dean position in The Chronicle of Higher Education (and subsequently placed the advertisement in several other periodicals).  The advertisement specifically noted that GW's President, Steven Knapp, and GW's Executive Vice President for Academic Affairs (Mr. Lehman) were "prepared to collaborate with the new Dean to transform the School into a first-tier research and educational component of GW."

12.     On March 31, 2008, all SEAS faculty received a status report from the SEAS Dean Search Committee that noted that the dean search was going well and was on schedule, and which noted that several candidates for interviews had been identified.

13.     On April 30, 2008, all SEAS faculty received an email message from the SEAS Search Committee that attached a schedule for the four dean candidates then remaining. The schedule showed that the candidates would be interviewed in early to mid-May 2008.

14.     In early 2008, Plaintiff communicated to the Chairman of his Department within SEAS and the Dean of SEAS that Plaintiff intended to retire from his employment with GW at or around the end of 2009 and inquired as to whether a voluntary separation package would be available to him at or around the time of his proposed retirement.

15.     By letter dated April 16, 2008, Mr. Lehman, on behalf of GW, notified Plaintiff that he had approved an individual voluntary separation package for Plaintiff.  Under the terms of that package, as outlined by Mr. Lehman, Plaintiff's retirement as a Professor of Operations Research within SEAS would be effective as of December 31, 2009 (the end of the 2009 Fall semester).  Mr. Lehman did not inform Plaintiff that any SEAS-wide voluntary separation program was in the works.

16.     In or around early September 2008, David Dolling began his employment as the new Dean of SEAS.

17.     By letter dated November 1, 2008, Mr. Lehman, on behalf of GW and the EVPAA, notified Plaintiff that, as part of the individual separation package GW was offering him, Plaintiff would receive a base academic-year salary of $162,653, effective January 1, 2009. Mr. Lehman further notified Plaintiff in his letter that, as part of the package, Plaintiff had been granted administrative leave at full salary during the 2009 Spring semester.  Mr. Lehman copied

Dean Dolling on this correspondence.  Mr. Lehman did not inform Plaintiff that any SEAS-wide voluntary separation program was in the works.  Nor did Dean Dolling so notify Plaintiff.

18.     Thereafter, on October 23, 2009, Mr. Lehman, on behalf of GW and the EVPAA, sent a letter to most SEAS faculty that noted that GW had "decided to initiate a Voluntary Separation Incentive Program for all full-time regular active status faculty in the [SEAS] who have been employed by GW in that capacity since July 1994 or earlier."  According to the letter, "[t]his Program is being instituted in anticipation of the ongoing academic evolution of [GW] as a major research university, in which the faculty will be expected to have significantly enhanced externally funded research activity."  Among other documents, Mr. Lehman's letter attached The George Washington University School of Engineering and Applied Science Voluntary Separation Incentive Plan and Summary Plan Description (the "2009 Separation Program").  Mr. Lehman did not inform Plaintiff that this SEAS-wide voluntary separation program was being offered.  Nor did Dean Dolling so notify Plaintiff.

19.     The 2009 Separation Program was memorialized in a set of formal documents – *i.e.*, the Plan – that describes the intended benefits, the classes of employees eligible, the source of financing, and the procedures for applying for benefits thereunder.

20.     As had been the case with the 1994 Separation Program, the 2009 Separation Program was offered to tenured faculty, in this case as an inducement to get older faculty to take early retirement so that the new Dean of SEAS, Dean Dolling, could replace these faculty with younger professors who generally performed a greater quantity of research than older faculty and who generally were better able to obtain significant external funding.

21.     This was made clear in January 2008, in the advertisement GW placed in The Chronicle of Higher Education and other periodicals which noted that GW's President and

the EVPAA were "prepared to collaborate with the new Dean to transform the School into a first-tier research and educational component of GW." This was also made clear in the October 23, 2009 correspondence GW sent to SEAS faculty informing them of the existence of the 2009 Separation Program – which letter specifically noted that the program was "being instituted in anticipation of the ongoing academic evolution of The George Washington University as a major research university, in which the faculty will be expected to have significantly enhanced externally funded research activity."

22.    By letter dated December 2, 2009, Plaintiff informed Mr. Lehman of his belief that he was eligible for benefits under the 2009 Separation Program and requested that GW provide him with an election form and other papers so that Plaintiff could elect to participate in the Program. By email dated December 7, 2009, Mr. Lehman informed Plaintiff that he had not sent Plaintiff a copy of the October 23, 2009 correspondence because Mr. Lehman did not believe that Plaintiff was eligible for benefits under the 2009 Separation Program because, in Mr. Lehman's view, Plaintiff's "full-time active status" with GW ended at the conclusion of the Fall 2008 semester.

23.    By letter dated December 21, 2009, Plaintiff informed Mr. Lehman of his view that, although he was on administrative leave with full pay during the 2009 calendar year, Plaintiff was qualified to participate in the 2009 Separation Program. Plaintiff noted in his letter that the GW Faculty Code defines only two grades of academic personnel – those in Retired Status and those in Active Status. Plaintiff further noted his belief that he met the Faculty Code's definition of "Regular" Active Status academic personnel. Plaintiff formally elected to participate in the 2009 Separation Program by signing and providing to GW on December 28,

2009 the "Separation Agreement, Waiver and General Release" and election form that accompanied the 2009 Separation Program plan documents.

24.     By letter dated February 16, 2010, Mr. Lehman (on behalf of GW and the EVPAA), formally denied Plaintiff's claim for benefits under the Plan.  According to Mr. Lehman's letter, Plaintiff failed to meet the definition of full-time active status faculty member under the Plan because "active status faculty members are expected to attend faculty meetings, serve on committees, assist with administrative work and perform their academic duties such as teaching and conducting research," and this definition "does not describe your status after December 31, 2008."  Notably, Mr. Lehman's letter did not provide any citation to any Plan or other document (such as the Faculty Code) that sets forth this definition of full-time active status faculty member.  By letter dated April 14, 2010, Plaintiff formally appealed the denial of his claim for benefits under the Plan.

25.     By letter dated June 11, 2010, Mr. Lehman (on behalf of GW and the EVPAA), formally denied Plaintiff's appeal under the Plan.  In his letter, Mr. Lehman admitted that the Plan does not define "full-time regular active faculty member."  However, Mr. Lehman argued that full-time active status is "generally understood to mean performing the customary functions of the job for which an employee was employed on an average of 30 or more hours a week."  Notably, once again, Mr. Lehman's letter did not provide any citation to any Plan or other document (such as the Faculty Code) that supports his definition or general understanding. Significantly, Mr. Lehman's letter admitted that "[c]ontinuation of salary may be evidence of 'active' employment status, but is not determinative."  Mr. Lehman also argued in his letter that certain language in the letters signed by Mr. Lehman that had outlined Plaintiff's individual

severance package "suggests" that Plaintiff was not a full-time active status faculty member at all times relevant.

26.     Mr. Lehman also argued in his June 11, 2010 letter that Plaintiff did not qualify for Plan benefits because his employment with the University ended on December 31, 2009 and only those employed through at least May 31, 2010 were eligible.  Notably, Mr. Lehman did not address the fact, in his letter, that Plaintiff's chosen resignation date was based upon Defendant's failure to inform him that it would be offering the 2009 Separation Program at any time prior to, or after, Defendant offered Plaintiff his individual severance package.  In other words, the only reason Plaintiff agreed to resign effective December 31, 2009, is that he was not made aware that he would need to remain employed at GW after that time in order to qualify for the enhanced benefits offered under the Plan.

**COUNT I**
**(ASSERTED AGAINST DEFENDANTS GW AND EVPAA)**
**BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA**
**<u>AND MISREPRESENTATION AND ESTOPPEL UNDER ERISA</u>**

27.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 26 above as if set forth at length herein.

28.     By virtue of the fact that Defendants GW and EVPAA:  (1) sponsored and/or administered the Plan; (2) exercised discretionary authority and/or discretionary control respecting management of the Plan; and/or (3) exercised authority and/or control respecting management and disposition of the assets of the Plan, GW and EVPAA were at all times relevant fiduciaries with respect to the 2009 Separation Program and the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

29.     By virtue of their positions as fiduciaries of the Plan, GW and EVPAA owed Plaintiff a fiduciary duty of loyalty, which included a duty not to mislead, and to provide

truthful material information to, Plaintiff with regard to his aforementioned inquiries.   This fiduciary duty required Defendants not only to inform Plaintiff of new and relevant information vis-à-vis the 2009 Separation Program as it arose, but also to advise Plaintiff of circumstances that threatened interests relevant to the parties' relationship.

30.     GW and EVPAA failed to act with the requisite prudence, breached their fiduciary duties owed to Plaintiff, and injured Plaintiff by (among other things) failing to provide Plaintiff with material, accurate information regarding the existence and serious consideration of the 2009 Separation Program in response to his inquiries in 2008 and throughout the course of 2009, which induced Plaintiff to retire within weeks of Defendants' offering of the program (and therefore denied Plaintiff the bargain of any benefits to which he would have been entitled under the program).

31.     As noted above, it is clear that, as of the time of Plaintiff's discussions and inquiries as to the existence of a voluntary separation program in early to mid-2008, and Mr. Lehman's correspondence to Plaintiff regarding his individual severance package as late as November 2008, GW was giving serious consideration to (and likely had already adopted and begun to implement) the 2009 Separation Program.

32.     Although Defendants had the 2009 Separation Program under serious consideration at the time Plaintiff made his inquiries, Defendants failed to provide this material information to Plaintiff.  Similarly, Defendants failed to provide Plaintiff with truthful, accurate material information regarding the existence of the 2009 Separation Program throughout calendar year 2009, although the Plan was obviously in the works as of that time.  In detrimental reliance upon Defendants' failure to disclose that a voluntary separation program would be offered to SEAS faculty at or around the time of his proposed retirement, Plaintiff agreed to

accept a less-favorable separation package from Defendants and agreed to retire from GW as of December 31, 2009.

33.     Had Defendants not misled Plaintiff as to the existence of the 2009 Separation Program at the time he inquired and in the time frame immediately leading up to his decision to retire, Plaintiff would not have left the employ of GW at the end of December 2009. Rather, Plaintiff would have remained in his position with GW through at least May 31, 2010 (only five months later), so as to be eligible to receive approximately $325,000 in severance benefits under the 2009 Separation Program.

34.     Not only did Defendants mislead Plaintiff as to the existence of the 2009 Separation Program, but Defendants affirmatively encouraged Plaintiff to retire as of December 31, 2009 by, among other things, offering Plaintiff a separation package that appeared to Plaintiff to be the best deal he could get at the time.  As a result, Plaintiff has been denied the benefit of the $325,000 in severance he should have received under the 2009 Separation Program.

35.     Defendants knew or should have known that a reasonable person in Plaintiff's position would have relied to their detriment on Defendants' material misrepresentations and omissions.

36.     By virtue of Defendants' material misrepresentations, misstatements and/or omissions to Plaintiff with regard to the existence and serious consideration of the 2009 Separation Program in response to Plaintiff's inquiries, Defendants' failure to take steps to correct those material misstatements, misrepresentations and/or omissions, and Plaintiff's reasonable and detrimental reliance there upon, Defendants are liable to Plaintiff for breach of fiduciary duty under ERISA and under the federal common law theories of estoppel and misrepresentation developed under ERISA.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

a.    For an order requiring Defendants to provide Plaintiff with a reasonable severance payment equivalent to that which he would have received had Defendants not provided him with false and misleading information that caused him to leave GW's employ prior to the formal announcement of the 2009 Separation Program;

b.    For disgorgement of profits and equitable restitution and the imposition of a constructive trust over funds Defendants wrongfully hold in their possession that rightfully belong to Plaintiff;

c.    For an equitable award of pre-judgment interest;

d.    For an award of reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(2);

e.    For costs; and

f.    For the grant of such further and additional relief as the Court deems proper.

## COUNT II

### (ASSERTED AGAINST DEFENDANTS GW, EVPAA AND PLAN)
### CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(A)(1)(B); § 1132(A)(1)(B)

37.    The averments of paragraph 1 through 36 are incorporated herein by reference.

38.    Plaintiff has exhausted his administrative remedies under the terms of the Plan and this claim is timely brought under the express terms of the Plan.

40.     Under the terms of the 2009 Separation Program – *i.e.*, the Plan – Plaintiff is entitled to receive two times his base academic year salary effective January 1, 2009, or $325,306.

41.     The Plan contains an ambiguity that must be construed against its drafter – GW – and in favor of Plaintiff.  Specifically, the Plan does not define "full-time active status" faculty member.

42.     Rather than construe the ambiguity in Plaintiff's favor, Defendants made every effort to construe the ambiguity against Plaintiff.  Indeed, although Defendants noted that Plaintiff had provided evidence of his status as a "full-time regular active faculty member," Defendants argued that such evidence was not "determinative" and that other evidence "suggested" that Plaintiff did not satisfy the relevant standard.  Yet, Defendants did not point to any definition set forth in any Plan document or any other controlling document (such as the Faculty Code).

43.     Defendants' decision to deny Plaintiff's severance benefits under the Plan therefore is arbitrary and capricious.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

a.      For severance benefits payable under the Plan;

b.      For an award of pre-judgment interest;

c.      For an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1);

d.      For costs; and

e.      For the grant of such further and additional relief as this Court deems just and proper.

Dated: November 23, 2010                          Respectfully submitted,


                                                  *//s// Jason H. Ehrenberg*

                                                  _____
                                                  Jason H. Ehrenberg (DC # 469077)
                                                  jhe@becounsel.com
                                                  James C. Bailey (DC #462391)
                                                  jcb@becounsel.com
                                                  BAILEY & EHRENBERG PLLC
                                                  1015 18th Street, NW
                                                  Suite 601
                                                  Washington, D.C. 20036
                                                  Tel:  (202) 331-1331
                                                  Fax:  (202) 318-7071

                                                  **Attorneys for Plaintiff**

13