**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RICHARD SOLAND,**<br><br>        Plaintiff,<br><br>    v.<br><br>**THE GEORGE WASHINGTON UNIVERSITY, et al.,**<br><br>        Defendants. | Civil Action No. 10-cv-2034 (RLW) |

**MEMORANDUM OPINION**

Plaintiff Professor Richard Soland ("Soland") brings this action against his former employer The George Washington University ("GWU") for alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461, as well as a claim of common law negligent misrepresentation. Soland claims that when he approached GWU about his plans to retire, they failed to inform him of a more generous retirement plan than the one he was offered, despite having the other plan under serious consideration at the time. He also claims GWU improperly refused to allow him to join the other plan when they ultimately announced it despite his being eligible to do so. Defendants GWU, The George Washington University School of Engineering and Applied Science Voluntary Separation Incentive Plan, and Donald Lehman and The George Washington University Office of the Executive Vice President for Academic Affairs moved to dismiss Counts I and III of Soland's complaint (Dkt. No. 14), and moved for summary judgment on Count II (Dkt. No. 17). After careful consideration of the materials submitted by both parties, for the reasons below the Court finds that Defendants' Motion to Dismiss (Dkt. No. 14) is granted in part and denied in part, and Defendants' Motion for Summary Judgment (Dkt. No. 17) is granted.

1

**I. Factual Background**

Soland taught at The George Washington University's School of Engineering and Applied Science ("SEAS") for over 30 years. (Dkt. No. 10 at ¶ 7). Around January 2008, he told the head of his department he planned to retire "at or around the end of 2009[,] and inquired as to whether a voluntary separation package would be available to him at or around the time of his proposed retirement." (Id. ¶ 14). After some discussion with staff of The George Washington University ("GWU"), Soland received a memorandum dated January 31, 2008 outlining the terms of a separation agreement. (See Dkt. No. 14, Ex. 1). It stated that final approval of the terms would need to come from Donald Lehman, the Executive Vice President for Academic Affairs ("Lehman"). (Id.)

Lehman approved the January 31, 2008 memorandum on April 7, 2008, and wrote Lehman on April 16, 2008 to confirm. (Id.). The letter from Lehman stated that Soland's "full-time active status will continue through the 2008 Fall semester," he would "be granted administrative leave" for 2009, and his retirement "will be effective as of the end of the 2009 Fall semester." (Id.) A November 1, 2008 letter confirmed the amount of money Soland would receive for 2009. (See Dkt. No. 10 at ¶ 17).

Around one year later, on October 23, 2009, Lehman announced a Voluntary Separation Incentive Program ("VSIP") "for all full-time regular active status faculty" in Soland's department. (Id. ¶ 18). GWU did not send notice of the VSIP to Soland. (Id.). After Soland learned of the VSIP, he wrote to Lehman on December 2, 2009 and expressed interest in participating in it. (Id. ¶ 22). Lehman told Soland he was not eligible because he was not "full-time active status." (Id.). Nonetheless, Soland sought to register for the program, and mailed in certain paperwork associated with it. (Id. ¶ 23). On February 16, 2010, Lehman denied Soland's

claim for benefits under the VSIP, which Soland appealed on April 14, 2010. (Id. ¶ 24). Lehman rejected that appeal by letter on June 11, 2010. (Id. ¶ 25).

Soland filed his complaint in this Court on November 23, 2010, stating claims under ERISA §§ 502(a)(3) & 502(A)(1)(B). (Dkt. No. 1). After Defendants answered and moved to dismiss the claim filed under ERISA § 502(a)(3) (Dkt. Nos. 7 & 8), Soland filed an amended complaint on March 8, 2011, adding an additional count of common law negligent misrepresentation. (Dkt. No. 10).

## II. Legal Standards

### A. Motion To Dismiss

Defendants have moved to dismiss Counts I and III of Plaintiff's complaint under Rule 12(b)(6). (Dkt. No. 14). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, the court construes the complaint liberally in the Plaintiff's favor and grants him all reasonable inferences. See Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Despite the positive inferences granted in considering a motion to dismiss, a complaint must sufficiently "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal citations omitted). Although the complaint does not require detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id.

### B. Summary Judgment

Defendants have moved for summary judgment with respect to Count II of Plaintiff's complaint. (Dkt. No. 17). Summary judgment is appropriate when the moving party

3

demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing FED. R. CIV. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

### III. Analysis

#### A. Soland's Count I Claim For Breach Of Fiduciary Duty

##### 1. Taking Soland's Allegations As True, Defendants Engaged In Fiduciary Action And Should Have Disclosed The VSIP

To state a claim under ERISA § 502(a)(3), Plaintiff must demonstrate Defendants acted in a fiduciary capacity. The ERISA statute states that "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan . . . or he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The Supreme Court has recognized that breach of fiduciary duty under ERISA can be an actionable claim. Varity Corp. v. Howe, 516 U.S. 489 (1996).

The motion papers clarify that Soland does not claim a fiduciary duty owed to him from discussions about his severance package. "[E]mployee benefits, such as severance pay, set forth in individually negotiated employment contracts, do not give rise to a 'plan' under ERISA." Johnson v. TCOM Sys., Inc., Civ. A. No. 89-0311 (RCL), 1989 WL 517870, at *2 (D.D.C. 1989). Soland and the Defendants agree that Soland's separation agreement is not an ERISA

plan, and therefore discussions related to it do not constitute fiduciary acts.  (See Dkt. No. 15, at 9 n.1).

The issue is whether Defendants' comments (or lack thereof) regarding the VSIP constitute fiduciary action.  Soland claims that because Defendants "sponsored and/or administered ERISA-covered retirement and benefit plans to which [he] was a participant," they owed him a fiduciary duty to disclose information regarding the VSIP when he inquired about his retirement in 2008 and during his ongoing negotiations that year.  (Dkt. No. 10, at ¶ 28). However Defendants claim Soland's participation in other ERISA plans "is of no moment." (Dkt. No. 14, at 9).  They claim "[t]here is no all-encompassing fiduciary duty . . . simply because Dr. Soland participated in other GW plans covered under ERISA."  (Dkt. No. 16, at 4).

Central to whether Defendants breached a fiduciary duty to Soland is whether the VSIP was under serious consideration at the time of the parties' ongoing discussions in 2008.  The Third Circuit essentially first devised the serious consideration test.  See Fischer v. Phila. Electric Co., 96 F.3d 1533 (3d Cir. 1996).  "Serious consideration of a change in plan benefits exists when (1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement the change."  Id. at 1539.  Several Circuit Courts have adopted the serious consideration test as formulated by Fischer, or modified it slightly.  See, e.g., Mathews v. Chevron Corp., 362 F.3d 1172, 1180-82 (9th Cir. 2004); McAuley v. IBM Corp., 165 F.3d 1038, 1043 (6th Cir. 1999); Vartanian v. Monsanto Co., 131 F.3d 264, 272 (1st Cir. 1997).  In the Second and Fifth Circuits the test is a materiality test, which is assessed through factors that include the serious consideration doctrine's factors but enhanced with others.  The materiality test is designed to avoid employers keeping information from employees before the three elements of the serious consideration test are met but after such

information would become materially relevant to an employee's decision to retire. See, e.g., Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997); Martinez v. Schlumberger, Ltd., 338 F.3d 407, 428 (5th Cir. 2003) ("[L]ack of serious consideration does not equate to a free zone for lying."). The D.C. Circuit has not yet expressed a preference for the serious consideration test or materiality test in the ERISA context. In part because the factual record is largely undeveloped, and thus the extent of any alleged misrepresentation remains unclear, this Court does not need to resolve the issue at this stage of the proceedings.

Assuming the VSIP was under serious consideration during the negotiations of Soland's separation agreement, Defendants owed him a fiduciary duty to disclose it. At this stage of the proceedings, Soland's allegations must be presumed true, see Holistic Candlers & Consumers Ass'n v. Food & Drug Administration, 664 F.3d 940, 943 (D.C. Cir. 2012), and the Court assumes Soland has alleged his facts in good faith. See FED. R. CIV. P. 11(b). Defendants claim that the VSIP "was established eighteen months later" than Soland's first communications about his retirement, and that Soland "never explains how Defendants could be liable for failing to disclose something that did not exist." (Dkt. No. 16, at 5-6). But this mischaracterizes what Soland alleges. He alleges that "Defendants had the 2009 Separation Program under serious consideration at the time Plaintiff made his inquiries." (Dkt. No. 10, at ¶ 32). And he alleges that "as of the time of Plaintiff's discussions and inquiries as to the existence of a voluntary separation program in early to mid-2008 . . . GW was giving serious consideration to (and likely had already adopted and begun to implement) the 2009 Separation Program." (Id. ¶ 31). This is not the time for resolving this factual dispute, as Soland's allegations that the VSIP was under serious consideration in 2008 are given credence at this stage.

Several courts have found a duty to disclose information regarding a new plan under serious consideration, or information regarding amendments to an existing plan, if a preexisting ERISA fiduciary relationship exists between the parties. In Mullins v. Pfizer, Inc., 147 F. Supp. 2d 95 (D. Conn. 2001), for example, the court rejected an employer's argument that because a new plan was at issue the employer did not owe any fiduciary duty regarding the new plan until it was formally adopted. Similarly, in Adamczyk v. Lever Bros. Co., a Division of Conopco, 991 F. Supp. 931, 940 (N.D. Ill. 1997), the court held that although "[a]n employer is not required to be perfectly prescient as to all future changes in employee benefits," "where an employer is seriously considering the implementation of a new plan, he or she has a fiduciary duty not to make misrepresentations." See also Flanagan v. Allstate Ins. Co., 213 F. Supp. 2d 862 (N.D. Ill. 2001). Defendants fail to distinguish these cases largely because they rely on their argument that the VSIP was not under serious consideration in 2008, which as discussed above this Court cannot accept at this stage.

### 2. Soland's Claims In Counts I And II Are Not Duplicative

Defendants also move to dismiss Count I because they claim it is "duplicative" of and "identical" to Count II. (Dkt. No. 14, at 12-13). They cite cases supporting the proposition that "a plan participant cannot proceed with a breach of fiduciary claim under Section 502(a)(3) when relief is available under other remedial sections of ERISA." Kifafi v. Hilton Hotels Ret. Plan, 616 F. Supp. 2d 7, 39 (D.D.C. 2009). They also state that Soland's reference to Count I being brought under an estoppel theory "should be dismissed for the same reasons." (See Dkt. No. 14, at 13-14).

Soland's theories in Counts I and II are not identical. As discussed further below, in Count II, he challenges the denial of benefits based on Defendants' interpretation of the VSIP's

7

language.  However in Count I, he alleges that Defendants failed to provide him with accurate information regarding the existence of the VSIP and its potential availability to him.  These are two different theories based on different actions by Defendants.  "Where plaintiffs are not merely repackaging a benefits claims [sic], it is entirely appropriate to bring simultaneous § 502(a)(3) and § 502(a)(1)(B) claims to address two separate and distinct injuries that are based in whole or in part on different facts."  England v. Marriott Int'l, Inc., 764 F. Supp. 2d 761, 779 (D. Md. 2011) (citing Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 839-40 (6th Cir. 2007)) (internal quotations omitted).  Such is the case here, and thus this Court finds that Count I is not duplicative of Count II.[1]

### 3. Soland Is Entitled To Discovery On The Issue Of When The VSIP Was Under Serious Consideration

If the VSIP was under serious consideration in 2008 when Soland approached Defendants and negotiated his severance package, it is possible he can state a claim for breach of fiduciary duty.  However if the VSIP was not under serious consideration at that time, this claim will likely fail.  Because Soland has alleged the former in his complaint, he is entitled to discovery with respect to this issue.

### B. In Count II, Soland Fails To Demonstrate That The Plan Administrator's Decision Was Unreasonable Or An Abuse Of Discretion

#### 1. ERISA Standard Of Review For Denial Of Benefits

Denial of benefits by an ERISA plan administrator is considered under the deferential "abuse of discretion" or "arbitrary and capricious" standard of review.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The Court of Appeals for this Circuit "has defined the Firestone deferential standard as one of 'reasonableness.'"  Wagener v. SBC Pension Benefit

---

[1]  With respect to estoppel, after the parties fully briefed the motion to dismiss, the Supreme Court decided Cigna Corp. v. Amara, which suggests that estoppel is appropriate equitable relief under § 502(a)(3). 131 S. Ct. 1866, 1878-81 (2011).

Plan–Non Bargained Program, 407 F.3d 395, 402 (D.C. Cir. 2005) (quoting Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1452 (D.C. Cir. 1992)). Review of the administrator's decision is based only "on the evidence presented to the plan administrators, not on a record later made in another forum." Pitney Bowes, 952 F.2d at 1455.

### 2. The Decision Of The Plan Administrator Is Both Reasonable And Entitled To Deference

The plan announced by GWU in October 2009 listed three conditions that must be satisfied in order to participate. First, one "[m]ust be a full-time regular active faculty member in SEAS" hired prior to August 1994. (Dkt. No. 17, at AR004). Second, the material "provided by the University" needed to be executed by January 29, 2010. (Id.) And third, faculty "[m]ust remain employed through his or her 'Resignation Date,' as defined in the Agreement." (Id.) Soland does not satisfy any of the three criteria.[2]

Defendants' interpretation that Soland failed to meet the definition of "full-time regular active faculty member" is entitled to deference. According to the separation agreement reached between Soland and GWU, he would continue to work full time, but only during 2008. (Id. at AR012). By describing Soland's status as full time only through 2008, the agreement clearly contemplates a change in that status after 2008. While Soland is correct that the October 2009 Plan does not specifically define "full-time regular active faculty member," this misses the point. (See Dkt. No. 20, at 11). Defendants interpreted the term as involving attendance at faculty meetings, participation in committees, conducting research, and other duties. (Dkt. No. 17, at AR037). This Court owes deference to that interpretation unless it is an abuse of discretion or arbitrary and capricious, which does not appear to be the case. Because the separation agreement

---

[2]   Neither party addresses point number two, although the Court notes that Defendants never "provided" the material to Soland. Instead, he obtained the material on his own.

defined Soland as working full time only through 2008, for Defendants to determine that he was not working full time in 2009 does not appear at all to be unreasonable.

Soland admits that he did not remain employed through any "Resignation Date" provided in the October 2009 plan. (Dkt. No. 20, at 12). He attempts to excuse this in part by claiming that the October 2009 plan "does not contain an express provision stating that an employee must retire on one of the referenced dates to receive benefits under the VSIP or that the VSIP is only intended to apply to employees who retire on one of the referenced dates." (Id. at 13.) But the record indicates otherwise. "Resignation Date" is defined as the date checked among the three listed: May 31, 2010; December 31, 2010; or May 31, 2011. (Dkt. No. 17, at AR017). When Soland sent in the materials he obtained, he left the choice among these three dates blank. (Id. at AR026). He did so because he was "terminated with [his] official retirement on December 31, 2009." (Id. at AR012). In addition, the October 2009 plan requires an employee to "remain employed" through their 2010 or 2011 Resignation Date, which of course Soland did not do as he retired at the end of 2009. (Id. at AR004). Facts are stubborn things, and Soland's effort here to wish them away fails.

The plan announced in October 2009 included criteria that needed to be met, and the record indicates that Soland did not satisfy them. Defendants' decision to deny Soland's request to participate in the plan is imminently reasonable, and especially so under the deferential standard applicable here. Accordingly, this Court will grant Defendants' motion for summary judgment with respect to Soland's second Count.

### C. Soland's Claim For Common Law Negligent Misrepresentation In Count III Is Preempted

ERISA contains a broad preemption provision to provide a uniform framework for employee benefit plans. The statute states it "shall supersede any and all State laws insofar as

they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).[3] State laws do not have to be specifically designed to affect employee benefit plans to be preempted. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (citation and quotations omitted).

ERISA preempts Soland's common law negligent misrepresentation claim. A state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983) (footnote omitted). Soland's claim in Count III depends on the existence of the VSIP, and alludes to it several times. For example, he claims that "Defendants' negligent misrepresentations" occurred because of a failure to disclose "a voluntary separation package." (See Dkt. No. 10, at ¶¶ 45, 50). In similar contexts other courts have noted that such a claim should be rejected as preempted by ERISA. In Olivo v. Elky, 646 F. Supp. 2d 95 (D.D.C. 2009), current and former employees of the National Museum of Women in the Arts claimed a failure to notify them regarding eligibility in an ERISA plan constituted common law negligence. The court held that their negligence claim related to the plan and was therefore preempted "because the duty that plaintiffs allege has been breached—the duty to notify—exists because of the Plan." Id. at 100 (citations omitted); see also Krooth & Altman v. N. Am. Life Assurance Co., 134 F. Supp. 2d 96, 101-02 (D.D.C. 2001) (coming to the same conclusion even though "these claims may rest upon actions that allegedly occurred before the [policy] was entered"). Because Soland's negligent misrepresentation claim relates to and is linked with the VSIP, it is preempted by ERISA.

---

[3] Soland misquotes the ERISA statute by replacing the word "shall" with the word "should." (Dkt. No. 15, at 22).

Soland states that Count III is brought "[a]s an alternative claim to his claim in Count I." (Dkt. No. 15, at 22; see also Dkt. No. 10, at ¶ 44). What Soland seeks to do in Count III has been explicitly rejected by courts in the past, and there is no reason to go against this precedent. Under ERISA, "a plaintiff's common law claim is preempted where she advances it 'as an alternative basis for recovering [benefits] under the . . . Plan.'" Olivo, 646 F. Supp. 2d at 100 (quoting Coleman v. Pension Benefit Guar. Corp., 196 F.R.D. 193, 197 (D.D.C. 2000); alterations in Olivo). Because here too Soland attempts to bring a common law claim as an alternative to his claim for benefits in Count I, the effort will be rejected.

The only case cited by Soland to the contrary is an unpublished 1992 case that members of this court have consistently declined to follow with respect to ERISA preemption since that time. See Johnson v. Antioch Univ., Civil Action No. 91-133-LFO, 1992 U.S. Dist. LEXIS 4931 (D.D.C. April 15, 1992). At issue in Johnson was an employee who relied on a promise that she would be covered under a new long-term disability plan when she was "encouraged by her employer to resign for health reasons." Id. at *3. Johnson is factually far afield from what is at issue in this case, in part because GWU did not encourage Soland to retire, and also because the issue of health care coverage is not present. But more importantly, the reasoning in Johnson—as Plaintiff himself notes (see Dkt. No. 15, at 23 n.5)—has been repeatedly criticized since. See, e.g., Olivo, 646 F. Supp. 2d at 101 ("Further, this Court has declined to follow the Johnson test in recent cases involving ERISA."); Krooth & Altman, 134 F. Supp. 2d at 101-02; Hurley v. Life Ins. Co. of N. Am., Civil Action No. 04-0252 (CKK), 2005 U.S. Dist. LEXIS 43038, at *41 (D.D.C. July 7, 2005) (calling Johnson "questionable"). As have several others, this Court declines to follow Johnson.

Defendants offer additional support for the dismissal of Count III, including an alleged failure by Soland to adequately plead his claim under Federal Rules of Civil Procedure 8(a) and 9(b). But because this Court finds the claim for common law negligent misrepresentation is preempted by ERISA, there is no need to consider these other arguments. As a result, this Court will grant Defendants' Rule 12(b)(6) motion with respect to Count III.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 14) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion for Summary Judgment (Dkt. No. 17) is **GRANTED**. An Order accompanies this Memorandum.

Date: January 7, 2013

ROBERT L. WILKINS
United States District Judge